## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ALBERT PARKER**                                                    **CIVIL ACTION**

**VERSUS**                                                               **NO.  05-3008**

**N. BURL CAIN, WARDEN**                                    **SECTION "F"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

### I.    Factual Background

The petitioner, Albert Parker ("Parker"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On August 22, 2000, Parker was charged in Jefferson Parish in a six count Bill of Information: Count One, the Second Degree Kidnapping of Nancy

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

Adams; Count Two, the Second Degree Kidnapping of Taylor Adams; Count Three, the Second Degree Kidnapping of Chase Fontenot; Count Four, the Second Degree Kidnapping of Jack Fontenot; Count Five, the Armed Robbery of Nancy Adams; and Count Six, a felon in possession of a weapon.[3]  The State later dismissed Count Six of the Bill of Information.[4]

The record shows that, on the evening of July 4, 2000, Nancy Adams and her three children, Taylor, age three, Chase, age seven, and Jack, age five, were driving home from a gathering of her boyfriend's family in Kenner.[5]  While heading home, Adams changed her mind about driving across the river.  She decided to telephone her boyfriend to ask if she and the children could spend the night at his father's home in Kenner.  Adams stopped at a telephone booth near Dean's Deli at the corner of Airline Highway and Williams Boulevard.

While she was on the phone with her boyfriend, a black man, later identified as Parker, approached her.  When he reached the phone booth, he hung up the telephone and pressed an object into her back.  Parker got in the passenger's seat of her car and ordered her to drive into New Orleans.  He initially told her that he wanted to go to the intersection of Tulane Avenue and Carrollton Avenue, but he changed his mind after Adams reached that location.

Parker told Adams that his sister lived nearby, and he instructed her to let him out further down on Tulane Avenue.  Adams followed Parker's instructions.  At some point, seven-year-old

---

[3]St. Rec. Vol. 1 of 5, Bill of Information, 8/22/00.

[4]St. Rec. Vol. 1 of 5, Minute Entry, 5/10/01.

[5]The facts were taken from the opinion on direct appeal issued by the Louisiana Fifth Circuit Court of Appeal. *State v. Parker*, 812 So.2d 86, 88-89 (La. App. 5th Cir. 2002); St. Rec. Vol. 3 of 5, 5th Cir. Opinion, 01-KA-0958, 2/13/02.

Taylor woke up.  Parker told Taylor that he had been in a fight with his girlfriend and needed a ride into New Orleans to his sister's house.

Adams later became very frightened because Parker told her to stop the car in a location where there were no people or houses.  When she stopped the car, Parker raised his hand as if to strike her.  Instead, he reached over and took her purse containing cash and sentimental jewelry.  He then exited the car and ran away.  Although Adams did not see a gun after the man entered the car, Taylor testified that she saw the gun while he was sitting in the front passenger's seat.

After Parker fled, Adams returned to the home of her boyfriend's father where she called the police.  Detective Brian McGregor of the Kenner Police Department responded to the call.  In the course of the investigation, Detective McGregor learned that a disturbance of the peace had been reported in Kenner near Dean's Deli earlier that evening.  Detective McGregor discovered that Parker was the perpetrator in that incident.  Bridgette Robinson, Parker's former girlfriend, testified at trial that she had called the police around 10:00 p.m. that night after Parker refused to leave her home.

Detective McGregor also learned that Officer Glaser of the Kenner Police Department had responded to the disturbance call.  Officer Glaser testified that he arrived at Robinson's home at 10:43 p.m.  Parker was not there at the time, but Officer Glaser saw him walking along Airline Highway.  The officer conducted a "field-interview" with Parker and then drove away.  At approximately 11:50 p.m., Officer Glaser saw Parker at the B&C Supermarket located at 1801 Williams Boulevard.  As he drove past the supermarket, Officer Glaser instructed Parker, by means of his vehicle's speaker system, to stay away from Ms. Robinson's home.  According to Officer Glaser, that supermarket was one block away from Dean's Deli.

Once Detective McGregor learned that Parker was the person involved in the disturbance incident, he compiled a photographic lineup containing Parker's photograph.  Both Adams and her daughter Taylor selected Parker's photograph from the lineup.  They also both positively identified Parker as the perpetrator at trial.

Parker was tried before a jury on Counts One through Five on December 13 and 14, 2000.[6] He was found guilty as charged on each count.[7]  The Trial Court denied Parker's Motions for New Trial and for Post Verdict Judgment of Acquittal at a hearing held on December 21, 2000.[8]  That same day, the Court sentenced Parker to 10 years on each of Counts One through Four and to 50 years on Count Five, to run concurrently.[9]  The Trial Court also denied Parker's Motion to Reconsider Sentence.[10]

Almost one month later, the State filed a Multiple Bill charging Parker as a multiple felony offender.[11]  At a hearing held on April 26, 2001, the Trial Court found Parker to be a third offender and resentenced him to serve a life sentence as to the conviction on Count Two, the second degree kidnapping of Taylor Adams.[12]

---

[6]St. Rec. Vol. 1 of 5, Trial Minutes (2 minutes), 12/13/00; Trial Minutes (2 pages), 12/14/00; St. Rec. Vol. 1 of 5, Motions and Trial Transcript, 12/13/00; Trial Transcript, 12/14/00; St. Rec. Vol. 2 of 3, Trial Transcript (continued), 12/14/00.

[7]*Id.*

[8]St. Rec. Vol. 1 of 5, Sentencing Minutes, 12/21/00; Motion for New Trial, 12/21/00; Motion for Post Verdict Judgment of Acquittal, 12/21/00.

[9]St. Rec. Vol. 1 of 5, Sentencing Minutes, 12/21/00; St. Rec. Vol. 2 of 5, Sentencing Transcript, 12/21/00.

[10]St. Rec. Vol. 1 of 5, Sentencing Minutes, 12/21/00; Motion to Reconsider Sentence, 12/21/00.

[11]St. Rec. Vol. 1 of 5, Multiple Bill (2 pages), 3/14/01.

[12]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 4/26/01; St. Rec. Vol. 2 of 5, Transcript of Multiple Bill Hearing, 4/26/01.

On appeal to the Louisiana Fifth Circuit Court of Appeal, Parker's counsel alleged that the life sentence was excessive.[13]  The Louisiana Fifth Circuit rejected the arguments and affirmed the convictions and sentences.[14]

Parker's subsequent and timely[15] pro se writ application to the Louisiana Supreme Court was denied without reasons on February 21, 2003.[16]  His convictions became final 90 days later, May 22, 2003, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

## II.   Procedural Background

On January 15, 2004, Parker filed an Application for Post Conviction Relief in the Trial Court raising six grounds for relief:[17] (1) suggestive and unreliable identification evidence was insufficient to support the convictions; (2) insufficient evidence to establish that the children, Chase, Taylor and Jack, were kidnapped; (3) insufficient evidence to support the armed robbery conviction; (4) the Jefferson Parish court lacked jurisdiction and venue over the armed robbery charge; (5)

---

[13]*State v. Parker*, 812 So.2d at 86; St. Rec. Vol. 3 of 5, 5th Cir. Opinion, 01-KA-0958, 2/13/02; St. Rec. Vol. 2 of 5, Appeal Brief, 9/24/01.

[14]*Id*.  The Court also instructed that the Trial Court notify Parker of the limitations period for filing for post conviction relief.  *Id*.  The Trial Court complied on April 18, 2002.  St. Rec. Vol. 3 of 5, Letter to Parker, 4/18/02.

[15]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to file a writ application in the Louisiana Supreme Court. His subsequent writ application had a postal meter date of March 7, 2002, which was within that period.  *See* St. Rec. Vol. 5 of 5, La. S. Ct. Letter, 2002-KO-1058, 4/17/02 (indicating postal meter on 3/7/02); *Causey v. Cain*, 450 F.3d 601 (5th Cir. 2006).

[16]*State v. Parker*, 837 So.2d 624 (La. 2002); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2002-KO-1058, 2/21/03; La. S. Ct. Letter, 2002-KO-1058, 4/17/02 (indicating postal meter on 3/7/02); La. S. Ct. Writ Application, 02-KO-1058, 4/16/02.

[17]St. Rec. Vol. 4 of 5, Uniform Application for Post Conviction Relief, 1/15/04.

ineffective assistance of counsel where counsel failed to object to the insufficient evidence, failed to have an expert testify regarding the child Taylor's competency to testify, and failure to challenge the prejudicial impact of Taylor's testimony; (6) the prosecutor violated his constitutional rights during voir dire and closing arguments by arguing that the criminal statute did not require a specific kind of evidence to establish that the crime occurred.

On January 23, 2004, the Trial Court determined that the first four claims were procedurally barred from post conviction review because they were not raised on direct appeal.[18]  The Court ordered Parker to show cause for the failure to raise the claims on appeal.  The Court also found that the fifth claim, ineffective assistance of counsel, was without merit under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  The Court did not address the sixth claim.

Parker filed a response to the show cause order on March 2, 2004, stating that his appellate counsel impeded his ability to file a pro se appeal brief in which he would have raised the claims now presented in his application for post conviction relief.[19]  Parker also filed a motion for leave to file an out of time appeal so that he could raise the claims and a motion to supplement the post conviction application.[20]

On March 15, 2004, the Trial Court held that Parker had failed to show cause for the failure to raise the first four claims on direct appeal.  The Court determined that appellate counsel had not been ineffective nor had he prevented Parker from obtaining information about the appeal.  Therefore, the Court determined that the claims were procedurally barred.  The Court also reiterated

---

[18]St. Rec. Vol. 4 fo 5, Trial Court Order (2 pages), 1/23/04.

[19]St. Rec. Vol. 4 of 5, Answer to Order to Show Cause, 3/2/04.

[20]St. Rec. Vol. 4 of 5, Motion for Leave of Court to File Supplemental Post Conviction Application, 3/2/04; Motion for Out of Time Appeal, 3/2/04.

that the claim of ineffective assistance of trial counsel was without merit.  The Court did not, however, address the sixth claim regarding the alleged prosecutorial misconduct.

Parker sought timely review of this ruling in the Louisiana Fifth Circuit.[21]  The appellate court denied the Writ Application finding no error in the Trial Court's March 15, 2004, order.[22]

Parker sought additional, timely review from the Louisiana Supreme Court on June 3, 2004.[23] The Court denied the application without reasons on April 22, 2005.[24]

## III.   **Federal Petition**

On July 19, 2005, Parker filed a petition for federal habeas corpus relief in which he alleges six grounds for relief:[25] (1) suggestive and unreliable identification evidence was insufficient to support the convictions; (2) insufficient evidence to establish that the children, Chase, Taylor and Jack, were kidnapped; (3) insufficient evidence to support the armed robbery conviction; (4) the Jefferson Parish court lacked jurisdiction and venue over the armed robbery charge; (5) ineffective assistance of counsel where counsel failed to object to the insufficient evidence, failed to have an expert testify regarding the child Taylor's competency to testify, and failure to challenge the prejudicial impact of Taylor's testimony; (6) the prosecutor violated his constitutional rights during

---

[21]St. Rec. Vol. 5 of 5, Undated copy of 5th Cir. Writ Application; *see also*, St. Rec. Vol. 4 of 5, Notice of Intent to Apply for Writ of Mandamus and Review, 4/16/04 (signed 4/8/04); Trial Court Order, 4/21/04 (granting to May 5, 2004 to file the writ).  The Writ Application was filed with the Louisiana Fifth Circuit on April 20, 2004.  This filing date appears on the face of that Court's subsequent order and has been confirmed with the office of the clerk of the Louisiana Fifth Circuit.

[22]St. Rec. Vol. 4 of 5, 5th Cir. Order, 04-KH-447, 4/26/04.

[23]St. Rec. Vol. 5 of 5, La. S. Ct. Letter, 2004-KH-1362, 6/3/02 (indicating post mark of 5/14/04); La. S. Ct. Writ Application, 04-KH-1362, 6/3/04.

[24]*State ex rel. Parker v. State*, 899 So.2d 566 (La. 2005); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2004-KH-1362, 4/22/05.

[25]Rec. Doc. No. 1.

voir dire and closing arguments by arguing that the criminal statute did not require a specific kind of evidence to establish that the crime occurred.

The State filed an opposition response arguing that Parker's petition is not timely filed.[26] Alternatively, the State argues that the first four claims are procedurally barred from review and the two remaining claims are without merit.

The Court must reject the State's timeliness defense. Parker's state post conviction filings were timely under the applicable state and federal mailbox rules as set forth above. *See Causey v. Cain*, 450 F.3d 601 (5th Cir. 2006). The rule of law applicable to this type of calculation was settled by the United States Fifth Circuit after the State's response was filed in this case. The Court will therefore set forth the standards of review for the procedural bar defense and the merits of the remaining claims.

## IV.   <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[27] applies to Parker's petition, which is deemed filed in this court under the federal "mailbox rule" on May 20, 2005.[28]

---

[26]Rec. Doc. No. 7.

[27]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Turner's federal habeas petition on June 6, 2005, when the filing fee was paid. Turner dated his signature on the petition on May 20, 2005. This is the earliest date on which he could have delivered it to prison officials for mailing. The fact that he paid the filing fee does not alter the application of the mailbox rule to his pro se petition. *Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002)

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). In this case, the State has raised the procedural default of four of Parker's claims. This issue must be addressed before proceeding to the merits.

## V.   Procedural Default

The State contends that Parker's first four claims, raising three grounds of insufficiency of the evidence and the lack of jurisdiction and venue, are in procedural default and are barred from federal review. Parker did not respond to the procedural default defense.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338.

This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*,

---

(mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

489 U.S. at 263; *Glover*, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

In this case, the three insufficiency of the evidence claims and the lack of jurisdiction and venue claims were ultimately dismissed by the Trial Court in its March 15, 2004, ruling.  The Court held that these four claims were barred from review because they were appealable issues which were not raised on direct appeal.  The Louisiana Fifth Circuit found no error in the Trial Court's ruling and the Louisiana Supreme Court denied the subsequent writ without reasons.  Thus, the Trial Court's ruling was the last reasoned decision on these issues.  *Ylst*, 501 U.S. at 802.

Therefore, the state courts barred review of Parker's claims based on procedural default pursuant to Louisiana law.  Specifically, La. Code Crim. P. art. 930.4(C) provides for the dismissal of a post conviction application which raises a claim which could have been and was not raised on direct appeal.  This Court must consider whether the bar prohibits consideration of the claim on federal habeas corpus review.  For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.

### A.    <u>Independent State Ground</u>

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338.  In this case, the Trial Court relied exclusively on a rule of Louisiana procedural default, independent of federal law, in reaching its decision to dismiss petitioner's claims. The ruling was therefore based on an independent state ground.  *See e.g.*, *Bennett v. Whitley*, 41 F.3d

1581 (5th Cir. 1994) (Art. 930.4); *Washington v. Cain*, 2000 WL 863980 (E.D. La. June 27, 2000) (Art. 930.4).

### B.      Adequate State Ground

The question of the adequacy of a state procedural bar is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993).  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339).  A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id*.  This federal habeas court must therefore evaluate the adequacy of each of the rules applied to bar petitioner's claims.

In doing so, a federal habeas court does not sit, however, to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp.2d 655, 674 (S.D. Tex. 1999).  Rather, a federal habeas court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).

In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, 2002 WL 31133094 at *4 n.2 (N.D. Ill. July 18, 2002).  For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar.  *Davis v. Johnson*, 2001 WL 611164 at *4 n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, 1999 WL 562728 at *4 (E.D. La. July 28, 1999) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, 1999 WL 518843 (E.D. La. July 20, 1999) (Art. 930.8 was not adequate to bar review because it was misapplied).  However, where such a basis exists in state law, the bar must stand.

As noted above, the basis for dismissal of these claims was the state procedural ground found in La. Code Crim. P. arts. 930.4(C), which provided for dismissal of a post conviction application if it raises a claim which should have been raised on appeal.  According to the record and the reasons of the Trial Court, neither Parker nor his appellate counsel raised these claims on appeal.  Under this situation, Art. 930.4(C) were adequate support for the state courts' bar to post-conviction review of these claims.

Parker will be excused from this procedural bar to review if he can show cause for his failure to raise the claims properly and prejudice from the failure to review the claims.

### C.    <u>Cause and Prejudice</u>

To establish a cause for his procedural default, Parker  must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Even under a broad reading, he has

not demonstrated in his pleadings the existence of any objective factor <u>external</u> to the defense that impeded his ability to raise these claims in a procedurally proper manner.

Furthermore, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." *Murray*, 477 U.S. at 486; *see also*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (a petitioner must first prove that counsel's actions were constitutionally deficient before such a claim can stand as cause for a procedural default). Parker attempted to show the state court that his appointed appellate counsel prevented him from obtaining information about his appeal which prevented him from raising the claims on appeal. The Trial Court determined from a review of the record that Parker had ample opportunity to seek leave to file a brief into his direct appeal and was in no way prevented by his counsel from doing so. The Trial Court also resolved that appellate counsel was not ineffective. Parker has not specifically raised this as cause before this Court to excuse his procedural default. Nevertheless, the Court has reviewed his allegations raised to the State and finds no basis for cause to excuse the bar. The Court also notes that if Parker intends to rely on the alleged ineffective assistance of appellate counsel as cause, he must first independently exhaust the claim. *Edwards*, 529 U.S. at 451. Parker, therefore, has not shown cause for the failure to properly raise these claims in state court.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982)). Thus, having failed to show an objective cause for his default, the Court need not determine whether prejudice existed and Parker has not alleged any actual prejudice. *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing

*Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).  Parker's claims of insufficiency of the evidence and lack of jurisdiction and venue are therefore procedurally barred from review by this court.  *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[29]

### D.  Fundamental Miscarriage of Justice

Parker's only remaining means of escaping this bar is if he can establish that a fundamental miscarriage of justice will occur if the merits of his claims are not reviewed.  *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  To establish this, a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence."  *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt."  *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

Parker has not pointed to any new or existing evidence which would create a reasonable doubt as to his guilt or which would establish his actual innocence of the crimes charged.  *Murray*,

---

[29]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte.  *Id*.  In the instant case, the State has affirmatively raised the procedural default defense.

477 U.S. at 496.  When the petitioner has not factually established his actual innocence, his procedural default can not be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Because Parker has not met any exception to the procedural bar, his four procedurally defaulted claims, the three claims of insufficiency of the evidence and the claim of lack of jurisdiction and venue, must be dismissed with prejudice without review of the merits.  The Court will proceed to the merits of Parker's two remaining claims.

**VI.**   **Standards of Review on the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law and mixed questions of fact and law.  A state court's determination of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Title 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  Title 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides deference to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.  A state court's

decision can be "contrary to" federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it unreasonably to the facts, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).

**VII.**   **Ineffective Assistance of Counsel**

Parker seeks review of alleged deficiencies in his trial counsel's performance.  Specifically, he alleges that his counsel failed to object to the evidence, failed to have an expert testify regarding Taylor's competency to testify, and failure to challenge the prejudicial or sympathetic impact of Taylor's testimony.  The State Trial Court provided the last reasoned decision on this issue.  *Ylst*, 501 U.S. at 802.

Relying on the standards set forth in *Strickland v. Washington*, 466 U.S. at 668, the Trial Court resolved that claims raised by Parker did not demonstrate deficient performance.  The Court held that the allegations did not go beyond strategic choices or trial tactics made by counsel during trial, including decisions regarding objections to testimony and evidence.

**A.**   **The *Strickland* Standard**

The standard for evaluating counsel's performance is set forth in *Strickland*, in which the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  To meet the burden of proving ineffective assistance of counsel, Parker "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  *Jernigan*, 980 F.2d at 296; *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466

U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all of the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994). In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id.* In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range

18

of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir.

1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.

1985).

A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than

not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some

conceivable effect on the outcome of the proceeding.'" *Motley*, 18 F.3d at 1226 (quoting Strickland,

466 U.S. at 693). Thus, conclusory allegations of ineffective assistance of counsel, with no showing

of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas

relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012

(5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000) .

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v.

Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must determine whether the state

court's failure to grant relief to Parker was contrary to or an unreasonable application of *Strickland*.

**B.      Failure to Object to the Evidence**

Parker alleges that his trial counsel erred in failing to object to the alleged insufficiency of

the evidence at trial. Parker's claims are generalized and non-specific. At best, he appears to

complain that counsel did not pose a challenge to sufficiency of the State's evidence.

Parker fails to make any specific demonstration of deficient performance or prejudice as a

result of counsel's alleged deficient performance. Conclusory allegations of ineffective assistance

of counsel do not raise a constitutional issue in a federal habeas proceeding. *Miller v. Johnson*, 200

F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir.1983)). In the

absence of a specific showing that specific errors and omissions were constitutionally deficient, and

how they prejudiced a petitioner's right to a fair trial, claims of ineffective assistance of counsel are without merit. *Miller*, 200 F.3d at 282 (*quoting Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir.1992)); *Wilson v. Cockrell*, 70 Fed. Appx. 219, 228 (5th Cir. 2003).

Furthermore, the record and transcript reflect that Parker's trial counsel challenged the identification evidence and Parker's pretrial statements in pretrial motions to suppress. The motions were considered after a full evidentiary hearing by the Trial Court held prior to trial.[30]  During the motion hearing, Parker's counsel questioned the police officer and Nancy Adams thoroughly regarding the identification procedure.[31]  Counsel likewise cross-examined the officers regarding the arrest and statements taken from Parker.[32]  Counsel presented a formidable challenge to the admissibility of this evidence.

With regard to the general evidence of the crimes presented at trial, the trial transcripts reflect that Parker's counsel effectively challenged the State's case through cross-examination of the witnesses and his argument to the jury.  This is ultimately what is required by the United States Constitution to avoid prejudice to the defendant in a criminal trial. *See United States v. Cronic*, 466 U.S. 648, 658-59 (1984).

For these reasons, the denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Parker is not entitled to relief on this claim.

---

[30]St. Rec. Vol. 1 of 5, Motion and Trial Transcript, p. 6, 12/13/00.

[31]*Id*.

[32]*Id*.

**C.**   **Failure to Hire an Expert and Challenge the Effect of Taylor's Testimony on the Jury**

Parker next claims that his counsel was deficient, and his constitutional rights were violated, where counsel did not hire an expert to determine whether the minor child, Taylor Adams, was competent to testify.  He also complains that counsel did not object to the prejudicial impact her age had on the jury.  In support of his claim, Parker references the Supreme Court decision in *Ake v. Oklahoma*, 470 U.S. 68 (1985).

This federal habeas corpus court does not sit to re-evaluate the admissibility of Taylor's testimony at trial.  *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992); *Burgett v. State of Texas*, 389 U.S. 109 (1967).  The consideration before this Court is whether Parker's counsel was deficient for failing to object to her testimony.  However, counsel does not err in failing to make a frivolous or baseless objection.  *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).  Thus, in order to succeed on an ineffective assistance of counsel claim, Parker would have to establish that counsel's performance was deficient when he failed to object to Taylor's competency to testify and the prejudicial effect of her testimony and that, but for this deficient performance, the outcome of the trial would have been different.

In this case, Parker has not established any such prejudice or due process violation to which counsel should have objected.  First, Parker has not pointed to any Supreme Court precedent nor can this Court find any which would stand for the proposition that the minor victim's testimony was inadmissable or unduly prejudicial because of her age.

In addition, Taylor, who was seven at the time of trial, testified before the jury that she understood the difference between telling a lie and telling the truth.[33]  She also testified with great detail that Parker was the man in her mother's car with the gun.[34]  The fact that Taylor's testimony was inculpatory to Parker, the very function and purpose of any State evidence, does not mean that it was unduly prejudicial.  In fact, the jury had other evidence before it to show that Parker was in fact the perpetrator of the crimes charged.  For example, the jury heard the testimony of Taylor's mother, Nancy Adams, who testified that Parker had a gun and forced her to drive him from Metairie to New Orleans, before stealing her purse.

The record therefore contained more than just Taylor's testimony sufficient to establish that Parker was the perpetrator.  Counsel was not remiss in failing to object to the additional testimony from Taylor.

Furthermore, Parker's reliance on *Ake* to support his claim is thoroughly misplaced.  In *Ake*, the Supreme Court resolved that, when requested, an indigent defendant is entitled to funding for psychiatric expert assistance when he "demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial."  *Ake*, 470 U.S. at 82-83.  Parker has not made an allegation that his sanity was at issue.  To the contrary, his claim here is strictly based on his belief that his counsel should have challenged the minor child's capacity to testify.  This is not an entitlement supported by *Ake*.

This notwithstanding, it is long resolved that an indigent defendant does not have an automatic right to expert assistance, even upon demand.  *Yohey v. Collins*, 985 F.2d 222, 227 (5th

---

[33]St. Rec. Vol. 1 of 5, Motions and Trial Transcript, p. 49, 12/13/00.

[34]*Id*., pp. 49-57.

Cir. 1993).  Rather, he must "establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial."  *Id.*; *Griffith v. Quarterman*, 2006 WL 2041291 at *5 (5th Cir. Jul. 21, 2006); *see also*, *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citing *Strickland*, 466 U.S. at 687).

In this case, Parker has made no showing to this, or any other court, that Taylor was not competent to testify because of her age, or any other condition, or that his trial was prejudiced as a result of his counsel's failure to challenge her competency to testify.  Her testimony was relevant and cogent with no indication from the transcript that it was unduly emotional or spectacular.

Parker has not shown that counsel was deficient for not objecting to Taylor's testimony.  He also can show no prejudice to the outcome of his trial arising therefrom.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Parker is not entitled to relief on this claim.

## VIII.   Improper Remarks by the Prosecutor

Parker finally alleges that the prosecutor violated state law when he misrepresented to the jury in voir dire and in closing argument that no particular evidence was required to prove the crimes charged.  He claims too that this amounted to a constitutional violation, which he does not identify. Parker refers to the prosecutor's statement during closing argument that the statutes did not require scientific evidence, such as fingerprints or physical contact.[35]  The prosecutor instead urged the jury to focus on the witness testimony.[36]  Parker alleges that this was a misstatement and violation of Louisiana law.

---

[35]St. Rec. Vol. 2 of 5, Trial Transcript (continued), p. 117, 12/14/00.

[36]*Id.*

A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted). This court's analysis focuses on due process considerations, and due process requires that the court grant the writ only when the errors of the state court made the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986). Thus, the court can consider Parker's arguments only in the context of federal constitutional law.

As a general matter, due process requires that state court proceedings be fundamentally fair. *Lisenba v. People of the State of California*, 314 U.S. 219, 236-37 (1941). A criminal proceeding is fundamentally unfair when the error fatally infects the trial or is of such a quality that it necessarily prevents a fair trial. *Id*.; *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the proceedings fundamentally unfair or violate an explicit constitutional right.)

However, improper jury argument by the State does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988). Due process requires reversal when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Bell v. Lynaugh*, 828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's remark must be evaluated in the context of the entire trial. *Greer v. Miller*, 483 U.S. 756, 765-66 (1987) (citing *Darden*, 477 U.S. at 179); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985). Thus, to obtain federal habeas relief based on allegations of improper prosecutorial comment or argument, a petitioner "must

demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Jones*, 864 F.2d at 356; *Hogue v. Scott*, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994).

In this case, the prosecutor's comment was directed at Parker's defense that there was no physical evidence, like fingerprints or DNA, to link him to the crimes charged.[37]  The prosecutor argued to the jury that it should look to the evidence presented to determine whether each element of the crimes were established.[38]  He urged simply that the fact that there were no fingerprints or other scientific evidence presented did not mean that the evidence failed to prove that Parker committed the crimes against Adams and her children.[39]  This is in fact the burden placed on the jury, to consider the evidence presented at trial in reaching its verdict.  The jury was properly instructed by the Trial Court on its burden to do so.[40]

Considering the trial, and the law, as a whole, the prosecutor's comments were not out of line with the evidence and did not amount to misconduct.  Parker has not shown that the prosecutor's statements were contrary to the law or to the jury's duties.  The comment did not render the trial fundamentally unfair or violate due process.  The state courts' denial of relief was not contrary to, nor an unreasonable application of, United States Supreme Court precedent.  Accordingly, Parker is not entitled to relief on this claim.

---

[37]*See*, St. Rec. Vol. 2 of 5, Trial Transcript (continued), p. 135, 12/14/00 (defense counsel's closing argument).

[38]*Id*., at pp. 17-18.

[39]*Id*.

[40]*Id*., at pp. 150, 151, 153 (jury charges).

## IX.    Recommendation

It is therefore **RECOMMENDED** that Albert Parker's petition for issuance of Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ____29th____ day of ____December_____, 2006.


_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**